IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FRANK CRIDLAND,**<br>             **Plaintiff,**<br><br>       v.<br><br>**KMART CORPORATION,**<br>             **Defendant.** | **CIVIL ACTION NO. 12-0157** |

**Baylson, J.**                                                                                                  **March 8, 2013**

**MEMORANDUM RE: MOTION FOR SUMMARY JUDGMENT**

Plaintiff Frank Cridland ("Plaintiff") commenced this action for employment discrimination, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C.A. § 621 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951 et seq., against his employer, Kmart Corporation ("Kmart" or "Defendant"). Presently before the Court is Defendant's Motion for Summary Judgment (ECF 25). After a review of the record and oral argument on March 7, 2013, and for the reasons that follow, the Court will grant summary judgment to the Defendant.

**I. FACTUAL HISTORY**

The following facts are undisputed or reflect Plaintiff's version of facts in the record, pursuant to this Court's duty to view all facts and inferences in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Frank Cridland is an adult male who was born in 1950. (Complaint ¶ 7). He began working for Kmart as a Store Manager in September of 1996 and was employed in

that position until he was terminated, on April 15, 2010. (Pl. Facts ¶¶ 1-2). In 2006, Plaintiff was transferred from Kmart's West Chester Store, where he had been working as a Store Manager, to its Reading Store, where he was also installed as a Store Manager. (Id. ¶ 12). Around this time, Kmart began executing a number of remodels of its stores across the country, including the West Chester store. (Id. ¶¶ 9-12). Defendant contends Plaintiff was transferred because Regional Manager Kwasi Opoku "had concerns about Plaintiff's ability to improve store standards and maintain the consistency required to implement the remodeling of the store." (Def. Facts ¶ 11). Plaintiff denies this was the reason for his transfer, but admits the remodeling of the West Chester store occurred after he left. (Pl. Facts ¶ 9).

During Plaintiff's tenure at the Reading store, he first reported to District Manager Michael Jemo and subsequently to District Manager David Fisher. In April 2007, he received a 2006 Year-End Review from Jemo which noted that Plaintiff "was given a fresh start in [the Reading Store] and must make sure that he does not let some poor habits come back to haunt him." (Pl. Facts ¶¶ 14-15). The Review also stated Plaintiff "must increase the intensity level he has within the store" and "stop settling for Mediocrity." (Def. Ex. B, Cridland 5, p. 3). Also in April 2007, Jemo put Plaintiff on a Performance Improvement Plan ("PIP"). PIPs are a measure taken at Kmart when an employee faces potential termination (Def. Ex. B, Cridland 6, p. 1) ("[T]he Company reserves the right to take action up to and including termination if sufficient improvement is not demonstrated."). The April 2007 PIP provided that Plaintiff needed to improve his performance in several areas: focus on the customer, building and aligning teams, accountability, and teamwork. (Def. Ex. B, Cridland 6, p.1). Jemo wrote, "Frank is

inconsistent with his management of the store; he needs to develop a sense of urgency and lead his team to accomplish tasks," and "Frank fails to hold his management or associates accountable to their tasks" and "spends little time on the sales floor following up to their projects." (Id.).

In December 2008, David Fisher replaced Michael Jemo as District Manager for the region encompassing the Reading Store. In April 2009, Fisher completed a 2008 Year-End Review for Plaintiff. The Review noted Plaintiff "makes good business decisions although sometimes falls short of the expectation." (Pl. Facts ¶ 27). It also found he "meets expectations" in several performance areas, such as customer-focus and effective decision making, but "needs development" in the area of "process thinking" and "must maintain the processing center on a more consistent basis." (Def. Ex. B, Cridland 9, pp. 1-2, 4).

In July 2009, Fisher placed Plaintiff on a PIP. (Pl. Facts ¶ 30). The PIP, like that assembled by Jemo in April 2007, found Plaintiff needed to improve his performance across multiple areas: build and align teams, accountability, coaching for execution, and results. The summary of findings, written by Fisher, provides:

> Frank is unable to meet daily company standards. Frank was unable to be Clean & Bright Certified on two separate certification dates, 7-15-09 & 7-22-09. Frank has demonstrated poor leadership, communication, accountability and standards. Frank has not met basic store standards and been able to execute [] the basic fundamentals of general store operations. Frank is able to utilize SHC components to devise action plans although the lack of proper communication, proper execution [and] the lack of accountability has rendered him ineffective in meeting SHC standards.

(Def. Ex. B, Cridland 10, p. 1).

In August 2009, Fisher assembled a 2009 Mid-Year Review for Plaintiff. While it lacked the evaluative fields and the rankings in the company's year-end

reviews, it contained comments by Plaintiff, stating: "My midyear results in going from one of the better managers to struggling was a real eye opener. I have taken to heart all criticisms, and concerns. I am working with dm to improve, and am working on everything I was given. . . . In 15 years, I have never had a review that wasn't at standard." (Def. Ex. B, Cridland 11, p. 2; Pl. Facts ¶ 36).

On September 16, 2009, Plaintiff received a Notice of Corrective Action for "overdue PLCs [price list corrections]." (Def. Ex. B, Cridland 12; Pl. Facts ¶ 39). On November 14, 2009, Plaintiff received two more Notices of Corrective Action, one related to his maintenance of "store conditions" and one related to the store's failure "to be certified on scheduled due." (Def. Ex. B, Cridland 13-14; Pl. Facts ¶¶ 40-41). Plaintiff denies there were problems his store's conditions and contends "David Fisher was building a paper trail of alleged deficiencies." (Pl. Facts ¶ 40). He claims the November 14 Notice relating to a failure to be certified was issued after a rigorous examination of the store that involved a "450-point checklist," and that Plaintiff had been on funeral leave for his wife's aunt at the time. (Pl. Ex. B, p. 81-83).

In November 2009, Regional Manager Kwasi Opoku visited the Reading Store, made observations of its conditions, and recommended that Plaintiff be placed on a PIP. (Pl. Facts ¶ 63). In his deposition, he stated that he found the store to be "in bad shape," primarily because Plaintiff had failed to implement a system to "organize the layaway" (merchandise customers are able to purchase on payment installment plans). He found "merchandise was just strewn all about in the lofts or the storage areas in receiving." (Def. Ex. C, pp. 23-24). Plaintiff contends that while he has no knowledge of these statements, Opolu had told him upon visiting the store that "the floor looked very good,

4

and [he] commented about minimizing 'outs,' which are voids on the shelf of a particular product that is supposed to be there." (Pl. Facts ¶¶ 61-62).

From December 2009 through March 2010, Plaintiff received eight more Notices of Correction. These pertained to failure to meet regional scheduling requirements; failure of the Reading store to be certified; unacceptable store conditions; not scheduling overnight personnel on an evening when a cleaning crew was present; not having cash deposits ready for pickup; and failure to have a backroom locator process. (Def. Ex. B, Cridland 15-22; Pl. Facts ¶¶ 42-47). Plaintiff admits he received these Notices and that the December Notice pertaining to a lack of certification had been correct. (See Pl. Facts ¶ 43). But he claims there were no deficiencies as to store conditions, scheduling, or the backroom locator process; rather, "Fisher was building a paper trail of alleged deficiencies which could have been found at many stores." (Pl. Facts ¶¶ 42, 43, 46 48, 49).

For three of the Notices, Plaintiff had attempted to provide explanations to Fisher. After receiving the December 22, 2009 Notice, which concerned scheduling, Plaintiff responded in writing that he had "needed to work for 36 hours due to call offs from work by other employees during a snow storm" (Def. Ex. B, Cridland 18; Pl. Facts ¶ 44). After receiving the January 1, 2010 Notice, concerning cash deposits, Plaintiff responded in writing that he had tried to have the deposits ready, but any delay "was because of snow." (Def. Ex. B, Cridland 19; Pl. Facts ¶ 45). For the January 1, 2010 Notice, concerning overnight personnel, Plaintiff responded in writing by explaining that he had instructed the night cleaners not to come in that evening – and so he had called off the overnight personnel – but the cleaners showed up anyway. (Def. Ex. B, Cridland 20; Pl. Facts ¶ 45).

5

On January 6, 2010, after a conversation between Fisher and Plaintiff about Plaintiff's performance problems, Plaintiff wrote Fisher an email stating: "I have looked carefully at the issues that continue to cause us to deviate from being at standard. I take every write-up extremely serious[ly], and I know you will continue to write me up but believe me I am no longer going to be a victim. Accountability will be at all levels, and all will know this. So with your approval the following changes will be made. . . . I believe these are the underlying things that have caused us to use resources we don't have to correct these issues. This is not lip serve, and as I said never again." (Def. Ex. E, Attachment, p. 2; Pl. Facts ¶ 50-52).

In February 2010, Fisher placed Plaintiff on another PIP. (Def. Ex. B, Cridland 24; Pl. Facts ¶ 64). The areas designated for improvement were: accountability, teamwork, coaching for execution, and integrity. Fisher laid out detailed plans for how Plaintiff would improve in these areas and for how Fisher would monitor him – e.g., "Daily replenishment will be monitored via daily photos of the receiving area"; "During Bi Weekly store visits I will review the Tracking of Unload and Replenishment"; and "Unload tracking will be executed to a minimum of 160 cartons per hour. Frank will document by day, associate and time each dc delivery." (Def. Ex. B, Cridland 24, pp. 1-2). During February and March, Fisher made routine visits to the Reading store and entered his findings in the PIP. His entries show inconsistent performance by Plaintiff. On February 19, 2010, Fisher found the "Sales floor was recovered," "Replenishment was up to date," and "Counter Detail was performed although not 100%." (Id. at 3). On March 17, 2010, he found the "store backroom was at standard" and the "store was neat and clean." (Id.). But on March 31, 2010, Fisher found the "Counter Detail no[t] at

standard," "Apparel was not processed," "Apparel freight not current," and "ASM communication poor." (Id.). Fisher stated that because Plaintiff failed to show "sustained improvement" over the course of the PIP, he was fired. (Def. Ex. E, ¶¶ 6-7).

Plaintiff was terminated on April 15, 2010. For a period of time, Chuck Salvitti, a Store Manager from a nearby Kmart store, oversaw the Reading store. (Def. Response Facts ¶ 99). Thereafter, Patrick Malarkey, an individual roughly fourteen years younger than Plaintiff, was hired as Store Manager for the Reading Store to replace Plaintiff. (Pl. Facts ¶¶ 99-100). Malarkey left for other employment in August 2010. (Id. ¶ 101). He was replaced by Angela Traugh, who is approximately nine years younger than Plaintiff. (Id. ¶¶ 102-103).

Plaintiff contends his termination was not made on account of his performance but on account of his age. (Complaint ¶ 13, 18; Pl. Facts ¶ 70). He admits he never registered any formal complaints with Kmart about age discrimination and that he never brought up the issue of ageism in written responses to his reviews, PIPs, and Notices of Correction. (Pl. Facts ¶¶ 54-56). But he claims Fisher made "maybe half a dozen" remarks to Plaintiff about his age, one of which was, "you're really starting to look old." (Pl. Ex. B, p. 111, 129). He contends Fisher made a similar comment a second time, after seeing Plaintiff's photograph on the wall. (Pl. Facts ¶ 76). Plaintiff admits he "will apparently be unable to corroborate the utterance of any of the statements at trial" (Pl. Facts ¶ 86).

## II. PROCEDURAL HISTORY

Plaintiff filed a Complaint against Kmart in this Court on January 13, 2012. (ECF 1). He alleged two causes of action: discrimination in violation of the Age Discrimination

7

in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), and discrimination in violation of the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 951 et seq. ("PHRA"). Kmart filed an Answer on March 15, 2012 (ECF 5). The Court held a hearing on various discovery motions on September 19, 2012 (ECF 23).  Thereafter, Kmart filed a Motion for Summary Judgment on November 29, 2012 (ECF 25), to which Plaintiff filed a Response (ECF 27), and Kmart filed a Reply (ECF 28).

### III. LEGAL STANDARDS

#### A. Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff brings a federal claim under the ADEA. Venue is proper under 28 U.S.C. § 1391(b).

#### B. Standard of Review

A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. A factual dispute is "material" if it "might affect the outcome of the suit under the governing law."  Id. Under Rule 56, the Court must view the facts and all reasonable inferences in the light most favorable to the non-moving party.  Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)).

Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's burden can be met by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v.

Catrett, 477 U.S. 317, 325 (1986). "[T]he plain language of Rule 56[] mandates that entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

### C. Age Discrimination in Employment Act & PHRA

The ADEA states that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The PHRA provides: "It shall be an unlawful discriminatory practice . . . [f]or any employer because of the . . . age . . . of any individual . . . to otherwise discrimination against such individual . . . with respect to compensation, hire, tenure . . . if the individual . . . is the best able and most competent to perform the services required." 43 Pa. Stat. Ann. § 944(a) (West). To prevail on a claim of intentional discrimination under the ADEA or the PHRA, "a plaintiff must show that his or her age 'actually motivated' or 'had a determinative influence on' the employer's adverse employment decision." Fasold v. Justice, 409 F.3d 178, 183 (3d Cir.2005) (citations omitted).

In the Third Circuit, ADEA and PRHA claims are litigated according to the burden-shifting framework developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) for Title VII claims. See Smith v. City of Allentown, 589 F.3d 684, 691 (3d Cir. 2009) (approving of the "continued application of the McDonnell Douglas paradigm in age discrimination cases"); Fasold, 409 F.3d at 183-84 (holding that ADEA and PHRA claims proceed under the McDonnell-Douglas framework). First, the plaintiff must

9

establish a prima facie case of age discrimination by a preponderance of evidence. Smith, 589 F.3d at 689. If the plaintiff satisfies this element, the burden shifts then to the defendant to "articulate a legitimate, nondiscriminatory reason for the employer's adverse employment decision." Id. at 691. The defendant need not prove, however, that its "proffered reasons actually motivated the salary decision." Stanziale v. Jargowsky, 200 F.3d 101, 105 (3d Cir.2000) (citation omitted). If the defendant presents evidence of a nondiscriminatory reason, the burden shifts back to the plaintiff to show that "the employer's proffered justification for the adverse action is pretextual." Smith, 589 F.3d at 691. The plaintiff can prove pretext by submitting evidence that allows a fact-finder to either disbelieve the employer's justification, or to conclude discrimination was more likely than not a "but for" cause of the employment action. Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). "Regardless of the method, the plaintiff's evidence must allow a reasonable jury to find, by a preponderance of the evidence, that age discrimination was a 'but for' cause of the adverse employment action." Abels v. DISH Network Serv., LLC, 2012 WL 6183558, at *3 (3d Cir. Dec. 12, 2012). Throughout the burden-shifting exercise, "the burden of persuasion, 'including the burden of proving but for causation or causation in fact, remains on the employee.'" Smith, 589 F.3d at 691 (internal citation omitted).

## IV. ANALYSIS

For the reasons below, the Court concludes summary judgment for Kmart is warranted. First, the Court finds Plaintiff failed to establish a prima facie case of age discrimination under the ADEA. While Plaintiff demonstrated that he was a member of the protected class and that he was replaced by a younger employee, he did not put forth

sufficient evidence upon which a reasonable jury could conclude he was qualified for the position at issue – a necessary requirement of establishing a prima facie case. Second, the Court finds Defendant proffered a legitimate, non-discriminatory reason for terminating Plaintiff's employment, Plaintiff's repeated performance problems as a Kmart Store Manager, but Plaintiff failed to establish that this reason is merely a pretext for discrimination. Each shortcoming in the Plaintiff's case – his failure to establish a prima facie case and his failure to prove pretext – justifies granting summary judgment for the Defendant.

### A. Prima Facie Case

Under the ADEA, a plaintiff must demonstrate the following to make out a prima facie case of age discrimination: (1) he is forty years of age or older; (2) the defendant took an adverse employment action against plaintiff; (3) plaintiff was qualified for the position at issue; and (4) he was replaced by an "employee who was sufficiently younger to support an inference of discriminatory animus." Smith, 589 F.3d at 689. As to the "qualification" prong, the plaintiff can either show he had the objective qualifications for the job at issue, or that he was promoted to his present position after a history of satisfactory performance at the company. See Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 268 (3d Cir. 2005) (holding one's "satisfactory performance of duties, leading to a promotion, does establish a plaintiff's qualification for a job").

The Court finds that Plaintiff carried his burden as to three prongs of the prima facie case. He demonstrated he was born in 1950, and so was over age 40 when he was terminated in April 2010. (Complaint ¶ 7). He demonstrated he suffered an adverse employment action, when he was fired as a Kmart Store Manager. And he also presented

11

evidence that he was replaced by two significantly younger employees – first, by Patrick Malarkey, who is approximately 14 years younger than Plaintiff, and second, by Angela Traugh, who is approximately 9 years younger than Plaintiff. (Pl. Facts ¶¶ 100-103; Pl. Ex. A; Pl. Ex. D, p. 21). "[T]o satisfy the sufficiently younger standard, 'there is no particular age different that must be shown, but . . . courts have held . . . that a five year difference can be sufficient [while] . . . a one year difference cannot.'" Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 307 (3d Cir. 2004) (citing Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231, 236 (3d Cir. 1999)). The age differences shown here, of 14 and 9 years, are sufficient for establishing a prima facie case. See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996) (holding that when a 56-year old employee was replaced by a 40-year old employee, this qualified as someone "substantially younger" for the purposes of establishing a prima facie case); Sempier v. Johnson & Higgins, 45 F.3d 724, 730 (3d Cir. 1995) (holding when an employee was temporarily replaced by a person who was 10 years younger and permanently replaced by a person four years younger, this was sufficient for the prima facie case).[1]

Plaintiff's problem is that he has failed to carry his burden as to the final prong of the prima facie case: demonstrating he was qualified for the position from which he was terminated. Kmart presented a substantial amount of evidence showing Plaintiff's performance as a Store Manager had been deficient over a long period of time and that Plaintiff was therefore unqualified to continue in that role. Its evidence demonstrates:

---

[1] Given that Plaintiff was 60 years old at the time of his termination (Complaint ¶ 7), his replacements would have been approximately 46 and 51 years old when they replaced him. Therefore, both were members of the "protected class" under the ADEA (persons aged 40 and above). But being replaced by a significantly younger employee is sufficient to make out a prima facie case of age discrimination even if the replacement is a member of the protected class. O'Connor, 517 U.S. at 312.

12

(1) Regional Manager Kwasi Opoku was concerned about Plaintiff's abilities as a Store Manager in 2006 and decided to transfer Plaintiff from the West Chester store to the Reading store when the former was being upgraded (Def. Ex. C, p. 18);

(2) Opoku personally observed problems with Plaintiff's management of the Reading store. (Pl. Ex. C, p. 19). During one visit in 2009, Opoku found Plaintiff had failed to implement an organized process for running the layaway program (Def. Ex. C, p. 24);

(3) District Manager Jemo reviewed Plaintiff's performance in April 2007 and stated Plaintiff "must increase the intensity level he has within the store" and "stop settling for Mediocrity" (Def. Ex. B, Cridland 5, p. 3);

(4) Jemo's PIP, from April 2007, noted "Frank does a poor job building a team," "fails to hold his management or associates accountable," and "is inconsistent with his management of the store" (Def. Ex. B, Cridland 6, p. 1);

(5) District Manager Fisher assembled a PIP for Plaintiff in August 2009, stating "Frank is unable to meet daily company standards," "was unable to be Clean & Bright Certified on two separate certification dates," and "has demonstrated poor leadership, communication, accountability and standards" (Def. Ex. B, Cridland 10, p.1);

(6) Plaintiff received ten Notices of Corrective Action between September 2009 and March 2010 (Def. Ex. B, Cridland 12-22).

Meanwhile, Plaintiff failed to put forth tangible evidence disputing his record of deficient performance or otherwise establishing he was qualified for his job. He presented no information on his education, training, or history of working in managerial positions at retail stores. He presented no testimony by coworkers or superiors at Kmart stating he was a capable Store Manager, and no evidence of promotions, pay increases, or positive reviews he received during his tenure at the company. Plaintiff's sole evidence in support of his qualifications is his citation to the "Business Results" portion of his 2008 Year-End Review, where the Review shows retail sales at the Reading store were a "3.5" on a scale from 1-5 in 2008. (Pl. Facts, ¶¶ 123-126). But this evidence is not sufficient to establish Plaintiff's qualifications to be a Store Manager – for not only are a store's sales in a one-

13

year period an isolated piece of data that could be an aberration from the store's typical performance, but retail sales are the result of a multitude of factors, such as consumer preferences and economic growth, and cannot be taken as direct evidence of a manager's performance without controlling for other causal variables.

In sum, given the volume of Defendant's evidence demonstrating Plaintiff's shortcomings as a Store Manager and the dearth of Plaintiff's evidence offered in support of his qualifications, the Court concludes Plaintiff has failed to put forth evidence creating a genuine dispute of fact as to whether he was qualified. A reasonable jury could not find in his favor. Plaintiff thus failed to establish a prima facie case of age discrimination under the ADEA and summary judgment would be justified on that basis alone.

### B. Defendant's Non-Discriminatory Reason

Had Plaintiff carried his burden in establishing a prima facie case of age discrimination, the burden would then shift to Kmart to present a neutral, business-driven, non-discriminatory reason for its conduct vis-à-vis Plaintiff.

The Court finds Kmart has carried its burden in this respect, as it has presented sufficient evidence to show it terminated Plaintiff based not on his age but on his continued, inadequate performance as a Store Manager. Kmart's evidence in this vein includes deposition testimony by Fisher, Jemo, and Opoku, all of whom recounted Plaintiff's sub-par performance; Year-End Reviews and PIPs for Plaintiff in which Fisher, Jemo, and Plaintiff himself documented deficiencies in Plaintiff's management and areas for improvement; and ten Notices of Correction sent to Plaintiff between September 2009 and March 2010. See supra. Additionally, Kmart showed that neither of

14

Plaintiff's superiors at the time he was fired, Fisher and Opoku, even knew how old he was. (Def. Facts ¶ 96).

### C. Pretext

Accordingly, the burden shifts back to Plaintiff to prove pretext. "[T]o defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reason; or (2) believe that an invidious reason was more likely than not a . . . determinative cause of the employer's action." Fuentes, 32 F.3d at 764. At oral argument, the Court directed the parties to focus their remarks specifically on the issue of pretext.

The Court concludes that Plaintiff has not demonstrated pretext through either of the two avenues provided for in Fuentes. First, Plaintiff failed to present evidence that could lead a reasonable fact-finder to "disbelieve the employer's articulated legitimate reason." Fuentes, 32 F.3d at 764. To provide a basis for disbelief, an employee must present "'evidence contradicting the *core facts* put forward by the employer as the legitimate reason for its decision.'" McGrath v. Lumbermens Merch. Corp., 851 F. Supp. 2d 855, 861 (E.D. Pa. 2012) (citing Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006)). Plaintiff has not done so here. Kmart's evidence shows that three superiors at Kmart found his performance to be problematic; two district managers put him on a PIP; he received ten Notices of Correction; and his store failed to be certified on multiple dates. Plaintiff submitted no evidence refuting these "core facts" of Kmart's dissatisfaction – no evidence that Plaintiff received positive reviews, no evidence that he

15

was showing signs of consistent improvement, and no evidence that he was managing his store according to the company's expectations. Compare with Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 331 (3d Cir. 1995) (finding plaintiff made a sufficient showing of pretext to reject summary judgment, when he presented evidence "that he had succeeded in selling oil for nearly twenty-five years in the employ [of his employer]"; that "he was rated 'fully acceptable' by [his employer] in his evaluations; and that "he received a sales bonus [three months before he was fired] for surpassing his sales quota in 1990 and 1991, and was the only salesperson in the Detroit region to exceed his or her sales quota for those years"). Plaintiff contended, in his deposition, that Fisher had been exaggerating the problems with Plaintiff's management because he "wanted to get rid of me because of my age." (Pl. Ex. B, p. 133). But Plaintiff presented no concrete evidence to support that allegation.

Based on the evidence submitted thus far, a reasonable factfinder would have no legitimate basis for disbelieving the company's nondiscriminatory explanation. See Hodczak v. Latrobe Specialty Steel Co., 451 Fed. Appx. 238, 241 (3d Cir. 2011) (affirming summary judgment in an ADEA case because there was "no basis for finding that [the employer's] proffered rational was a pretext for age discrimination"); McGrath, 851 F. Supp. 2d at 861 (granting summary judgment because "no reasonable jury could find that these justifications were conjured up *post hoc* as pretext because they have been on the uncontroverted record for years"); Waris v. HCR Manor Care, 2009 WL 330990, at *1 n.2 (E.D. Pa. Feb. 10, 2009) (Baylson, J.) ("Plaintiff's assertion that Defendant's evidence lacks credibility is not supported by any factual allegations or affirmative

16

evidence; therefore, the Court will not consider such unsubstantiated assertions as disputed factual issues."), aff'd 365 Fed. Appx. 402 (3d Cir. 2010).

Second, Plaintiff did not present evidence from which a factfinder could conclude "an invidious reason was more likely than not a . . . determinative cause of the employer's action." Fuentes, 32 F.3d at 764. To prove that invidious intent was a "determinative cause" of an employer's action, "a plaintiff can show, for example, that the defendant had previously subjected the same plaintiff to 'unlawful discriminatory treatment,' that it had 'treated other, similarly situated persons not of his protected class more favorably,' or that it had 'discriminated against other members of his protected class or other protected categories of persons.'" Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 277 (3d Cir. 2010) (quoting Fuentes, 32 F.3d at 765). Plaintiff contends he met this burden by submitting a table showing there was an additional store manager close to his age who was also terminated by David Fisher (that individual, Mr. Januus, was four years older than Plaintiff), while there were ten store managers under Fisher's control, all of whom were younger than Plaintiff and none of whom were terminated. (Pl. Facts ¶¶ 108-109; Pl. Ex. A, Enclosure #2). But a reasonable factfinder could not conclude based on these facts alone that Fisher acted with invidious purpose. There is no showing that the younger store managers had received the same degree of negative reviews as had Plaintiff – i.e., that they were "similarly situated" – nor that Januus had been qualified for his job. There are no facts whatsoever about the abilities or performance of these store managers; Plaintiff's table merely provides the ages of the other store managers under Fisher's control and whether or not they were terminated. This sort of raw data does not support a finding invidious intent. See Ezold v. Wolf, Block Schorr & Solis-Cohen, 983 F.2d 509,

17

542-43 (3d Cir. 1992) (holding "raw numerical comparisons" between the number of male and female partners, when "not accompanied by any analysis of either the qualified applicant pool or the flow of qualified candidates over a relevant period of time," was not "relevant to a showing of pretext").

      Plaintiff's description of the discriminatory treatment he faced is also too vague, elusive, and uncorroborated to make a sufficient demonstration of invidious intent. During his deposition, Plaintiff "guess[ed]" there were "maybe half a dozen times" when David Fisher made negative comments about his age, but he could remember only two specific instances.[2] Both involved a nearly identical statement made by Fisher that Plaintiff was "starting to look old," (Pl. Facts ¶ 75; Def. Ex. A , pp. 111-113, 129-130), and one such statement was allegedly made after Fisher saw a "blowup picture" of Plaintiff at the front of the store. (Def. Ex. A. p. 129) ("I believe he looked at that and laughed and said, you're really starting to look old aren't you."). Plaintiff conceded it was only Fisher, not any other superior at Kmart, who acted with discriminatory animus. (Id. at 111). And he could not name a single person who heard Fisher's remarks, (id. at 112-113); rather, he admits he will be unlikely "to corroborate the utterance of the statements [by Fisher] at trial." (Pl. Facts ¶¶ 77, 79). The three assistant store managers who worked alongside Plaintiff filed affidavits for Kmart, stating they "never heard Mr. Fisher make

---

[2] Plaintiff's deposition testimony was as follows:
      Q: Okay. How many conversations and comments about your age were there?
      A: I don't remember specifics. I would say maybe a half a dozen times.  But that's a guess. I'm not positive.
      Q: And was it always by Mr. Fisher, or was it by someone else?
      A: No, by Fisher.
      Q:  And what were these conversations and comments that you remember?
      A: I don't remember anything verbatim other than, you're really starting to look old, I remember was one specific. But things in that vein, I remember.
      . . .
      Q:  What were the other comments?
      A: The others, I don't remember specifics, but similar to that vein, I believe.
(Def. Ex. A. p. 111); (see also id. at 129).

any comments about [Plaintiff's] age." (See Def. Ex. G, Statement of Karen Engleman, ¶¶ 3-4); (Def. Ex. H, Statement of Patrick Reichert, ¶¶ 3-4); (Def. Ex. I, Statement of Cathy Nazelrod, ¶¶ 3-4).

Given the vague descriptions of Fisher's alleged discriminatory treatment and the lack of corroborating evidence, a reasonable factfinder could not conclude that Kmart was motivated by an "invidious purpose." Under Third Circuit precedent, "stray remarks" unconnected from an adverse employment decision are insufficient to show invidious purpose. See Hodczak v. Latrobe Specialty Steel Co., 451 Fed. App'x 238, 241 (3d Cir. 2011) ("Here, although several of the statements were made by LSS executives, they were temporally remote from the decision to discharge Appellants, and completely unrelated to the investigation regarding Appellants' violation of the EC Policy. Thus, the comments qualify as 'stray remarks' and are entitled to minimal weight."); Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks . . . by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision."). Additionally, under Third Circuit precedent, a plaintiff's uncorroborated testimony about discriminatory treatment cannot – on its own – demonstrate invidious intent at the summary judgment stage. See Solomon v. Soc'y of Auto. Eng'rs, 41 Fed. App'x 585, 586 (3d Cir. 2002) (holding summary judgment for the employer was warranted because "the only evidence in support of [plaintiff's] claims was Solomon's own testimony"); Fusco v. Bucks Cnty. of Pa., 2009 WL 4911938, at * 11 (E.D. Pa. Dec. 18, 2009) ("The Plaintiff offers no support, beyond her own testimony, to corroborate her claims."). Plaintiff has thus failed to present sufficient evidence from which a reasonable factfinder could find

pretext – he neither established a legitimate basis for disbelieving the Kmart's nondiscriminatory explanation for its action, nor presented sufficient evidence to support a finding that individuals at Kmart were driven by invidious intent.

\*\*\*

For the reasons set forth above, Defendant's Motion for Summary Judgment is GRANTED.  An appropriate order follows.